Narendra Parbhubhai PATEL,
Appellant–Defendant,

v.

UNITED INNS, INC., Appellee–
Plaintiff.

No. 06A04–0709–CV–501.

Court of Appeals of Indiana.

May 30, 2008.

Brett J. Miller, Karl L. Mulvaney, Anne Cowgur, Bingham McHale LLP, Indianapolis, IN, Attorneys for Appellant.

Andrew J. Detherage, T. Joseph Wendt, Barnes & Thornburg LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Narendra Parbhubhai Patel appeals two orders from the trial court. First, Patel appeals from the trial court's partial grant of summary judgment for United Inns, Inc. ("United Inns"). Second, Patel appeals from the court's judgment after a bench trial in favor of United Inns. Patel raises two issues for our review, which we restate as follows:

1. Whether the trial court erred when it found that Patel had breached his contract with United Inns.

2. Whether the court erroneously concluded that a liquidated damages clause was enforceable.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On December 13, 2004, United Inns filed a complaint seeking declaratory relief against Patel for breach of contract. In early 2006, the parties filed motions for summary judgment on the issues of Patel's alleged breach and the enforceability of the contract's liquidated damages clause. On May 3, after a hearing, the court denied the parties' motions for summary judgment on the question of Patel's breach of contract, but the court agreed with United Inns that the liquidated damages clause was valid and enforceable.

On April 16, 2007, the court held a bench trial on the issue of Patel's breach of contract. After trial, the court entered findings of fact and conclusions thereon. In reaching its judgment, the court stated as follows:

### I. Findings of Fact

1. In 2004 plaintiff [United Inns] owned a hotel in Lebanon, Indiana (the "Hotel"). United Inns owned the Hotel for over thirty (30) years.

2. In each of 2003 and 2004 the Hotel lost hundreds of thousands of dollars. United Inns' lender, BB & T, who acquired debt originally financed by Bank of Louisville, wanted United Inns to sell the [H]otel. The credit quality of the debt was poor and BB & T wanted to be rid of it.

3. After conventional efforts to sell the Hotel failed, United Inns decided to sell the Hotel at an absolute auction. At this auction United Inns was obligated to sell the Hotel to the highest bidder regardless of price. The benefit to United Inns of such a sale is that it was supposed to receive an obligated purchaser and a contract without contingencies. It assumed the risk of a low selling price.

4. Accelerated Marketing Group was engaged to market the Hotel and conduct the auction. Mr. Patel received a mass-mailing flier, advertising United Inns' sale of the Hotel by auction. This flier generated Mr. Patel's interest in the auction and the sale.

5. Mr. Patel attended the auction because he believed he could possibly purchase United Inns' Hotel for about half of its value.

6. Prior to the auction Mr. Patel understood (1) that the second highest bidder would execute a purchase agreement at the end of the auction; and (2) the executed contract may become binding if the highest bidder did not close on its purchase of the Hotel.

7. The auction occurred on September 30, 2004 at the Hotel.

8. Mr. Patel attended the auction on September 30, 2004.

9. A company named Oceanic Hospitality ("Oceanic") was the winning, high bidder.

10. Oceanic and United Inns executed a Real Estate Sale Contract ("Oceanic Contract") for the purchase of the Hotel.

11. Oceanic's total purchase price was $2,517,500 (comprised of the winning bid of $2,375,000 plus a Buyer's Premium of $142,000).

12. The Oceanic Contract required Oceanic to immediately make an Initial Earnest Money Deposit of $100,000 to

Abstract & Title Services of Boone County, Inc.

13. The Oceanic Contract also required Oceanic to make an Additional Earnest Money Deposit of $530,000 to Abstract & Title Services of Boone County, Inc. by Noon Central Standard Time on October 5, 2004.

14. Mr. Patel was the second highest bidder and also executed a Real Estate Sale Contract with United Inns for the potential purchase of the Hotel ("Patel Contract").

15. At the execution of the Patel Contract, Mr. Patel understood that if Oceanic did not close on the property he would become the purchaser of the Hotel.

16. The Closing Date identified in the Patel Contract was October 28, 2004.

17. At the time United Inns entered the Oceanic Contract and the Patel Contract, it could not predict when or if it would sell the Hotel again if both Oceanic and Patel breached their respective contracts. United Inns ultimately sold the Hotel to an assignee of Oceanic, Jewel Hospitality, LLC, and realized the benefit of the expected proceeds from the sale to the original high bidder plus some closing date extension fees. Patel although depositing a total of $249,100.00 in earnest money (to which United Inns and Patel each claim entitlement) did not buy the Hotel. There was no evidence presented that the Patel [C]ontract was the result of unequal bargaining power. There was no evidence that the Patel [C]ontract was procured by fraud or duress. United Inns was under pressure to sell from its creditor and wanted to sell quickly. Patel wanted a good deal. United Inns was a motivated[ ] seller. Patel was a motivated [2] buyer.

FOOTNOTE 2: Mr. Patel owns interests in [a] number of businesses. He owns interests in a number of hotels. He is not in any sense an unsophisticated bidder. The Court finds incredible his testimony that he put additional money $149,100.00 into the earnest money escrow not because he had become the high bidder but because he "thought everybody in the world is honest and pretty much [he] put up the money to protect the $100,000.00 that [he] had already put in there."

18. Paragraph 45 of the Patel Contract described Mr. Patel's rights and obligations as the second highest bidder and provided that Mr. Patel's execution of the Patel Contract constituted an offer to purchase the Hotel in accord with the terms of the Patel Contract and that this offer remained irrevocable through Noon, Central Standard Time, on October 7, 2004. Paragraph 45 stated:

> Buyer agrees that Buyer's execution and delivery of this Contract to Seller shall constitute an irrevocable offer to purchase made to Seller but shall not be binding upon Seller *unless the high bidder defaults.* Buyer hereby agrees that this offer shall remain irrevocable until 12:00 Noon Central Standard Time on October 7, 2004. Notice from seller of its acceptance or rejection of Buyer's offer under this Section may be given pursuant to the "Notices" Section of this Contract or by telephone and confirmed by letter at a later date. Failure of Seller to notify Buyer by the foregoing date and time that Seller rejects Buyer's offer shall not constitute an acceptance by the Seller of Buyer's offer.

([The emphasized] portion was specifically added to the Patel Contract in hand-writing[.) ]

19. Mr. Patel initialed the page of the Patel Contract on which the above provision, paragraph No. 45, appeared and admitted that paragraph 45 was specifically addressed at his execution of the Contract.

20. Mr. Patel understood that paragraph 45 of the Patel Contract would operate to create a binding contract with United Inns if the high bidder defaulted and United Inns accepted his offer. He testified:

Q: If you would turn to Page 19 of [the Patel Contract], please. Paragraph 45 has some handwriting there.

A: Yes.

Q: Whose handwriting is that?

A: Todd's.

Q: Was there a discussion about that addition?

A: Yes.

\* \* \*

Q: What was your understanding of the effect of this change?

A: If [the high bidder] defaulted, I would be considered the highest bidder.

Q: And the purchaser?

A: And the purchaser.

Q: And have a contract to buy the property?

A: Correct.

21. Oceanic did not make the required Additional Earnest Money Deposit by October 5, 2004.

22. Oceanic was notified that its failure to make its Additional Earnest Money Deposit of $530,000 constituted a default under the Oceanic Contract.

23. On October 6, 2004, United Inns declared Oceanic in default of the Oceanic Contract.

24. Mr. Patel admitted that prior to Noon, Central Standard Time, on October 7, 2004, United Inns, through its agents, notified Mr. Patel by email that United Inns had accepted his irrevocable offer set forth in the Patel Contract.

25. The Patel Contract contained the following provisions:

9. *Buyer's Default.* IF THE CLOSING AND THE CONSUMMATION OF THIS PURCHASE AND SALE OF REAL PROPERTY DO NOT OCCUR AS HEREIN PROVIDED BY REASON OF ANY DEFAULT OF BUYER (AND SELLER IS NOT IN DEFAULT)[,] BUYER AND SELLER ACKNOWLEDGE AND AGREE THAT IT WOULD BE IMPRACTICAL AND EXTREMELY DIFFICULT TO DETERMINE THE DAMAGES THAT SELLER WILL HAVE SUFFERED AS A CONSEQUENCE OF SUCH DEFAULT. THEREFORE, BUYER AND SELLER HEREBY AGREE THAT IN THE EVENT THAT BUYER DEFAULTS AND FAILS TO COMPLETE THE PURCHASE OF THE PROPERTY IN ACCORDANCE WITH THIS CONTRACT, SELLER SHALL BE ENTITLED TO RETAIN (AND/OR COLLECT FROM BUYER), AS SELLER'S SOLE AND EXCLUSIVE REMEDY, LIQUIDATED DAMAGES IN AN AMOUNT EQUAL TO THE TOTAL EARNEST MONEY (BOTH "INITIAL" AND "ADDITIONAL" EARNEST MONEY) WHICH BUYER IS REQUIRED TO DEPOSIT UNDER THIS CONTRACT. THE PARTIES FURTHER ACKNOWLEDGE AND AGREE THAT THIS SUM IS A REASONABLE ESTIMATE OF THE TOTAL NET HARM AND DETRIMENT THAT SELLER COULD BE ANTICIPAT-

ED TO SUFFER CONSIDERING ALL THE CIRCUMSTANCES EXISTING ON THE DATE OF THIS CONTRACT, INCLUDING THE RELATIONSHIP OF THIS SUM TO THE RANGE OF HARM THAT SELLER COULD BE EXPECTED TO SUFFER AND THE ANTICIPATION THAT PROOF OF ACTUAL DAMAGES TO SELLER WOULD BE COSTLY AND INCONVENIENT[.] SUCH AMOUNT SHALL BE THE FULL, AGREED AND LIQUIDATED DAMAGES FOR BREACH OF THIS CONTRACT BY BUYER, ALL OTHER CLAIMS TO DAMAGES OR OTHER REMEDIES WITH RESPECT THERETO HEREBY BEING EXPRESSLY WAIVED BY SELLER. THE RETENTION AND/OR COLLECTION OF SUCH AMOUNT AS LIQUIDATED DAMAGES IS NOT INTENDED AS A FORFEITURE OR PENALTY, BUT IS INTENDED TO CONSTITUTE VALID LIQUIDATED DAMAGES TO SELLER. IN THE EVENT OF ANY DEFAULT BY BUYER, THIS CONTRACT SHALL, UPON SELLER'S ELECTION, IMMEDIATELY TERMINATE, AND NEITHER PARTY SHALL HAVE ANY FURTHER RIGHTS OR OBLIGATIONS HEREUNDER, EXCEPT AS MAY OTHERWISE BE PROVIDED IN THIS CONTRACT, AND EXCEPT FOR THE RIGHT OF SELLER TO COLLECT SUCH LIQUIDATED DAMAGES FROM BUYER AND ESCROW AGENT, AND EXCEPT FOR BUYER'S OBLIGATION TO EXECUTE ANY AND ALL DOCUMENTS REASONABLY NECES-SARY TO CLEAR TITLE TO THE PROPERTY FROM ANY INTEREST OF BUYER. BY PLACING THEIR INITIALS IN THE PLACES PROVIDED BELOW, THE PARTIES CONFIRM THE ACCURACY OF THE STATEMENT MADE ABOVE AND CONFIRM THEIR AGREEMENT TO THE FOREGOING LIQUIDATED DAMAGES PROVISION.

14. *REVIEW OF DOCUMENTS BY BUYER.* Buyer acknowledges and agrees that although Buyer has received from Seller or its agents and has reviewed certain materials and documents concerning the Property, including those contained in the Due Diligence Packet [1] supplied to Buyer, these materials and documents have been supplied for informational purposes only, and that neither Seller nor any agent of Seller has made or is making any representation or warranty concerning the accuracy, completeness or consistency of such materials or the information contained therein.

21. *ADDITIONAL DISCLAIMERS.*

\* \* \*

E. NEITHER SELLER, BROKER NOR ANY OTHER AGENT OR REPRESENTATIVE O[F] SELLER MAKES ANY REPRESENTATIONS OR WARRANTIES CONCERNING THE ACCURACY OR COMPLETENESS OF ANY MATERIALS CONTAINED IN ANY DUE DILIGENCE PACKET, BROCHURE OR ADVERTISEMENT RELATING TO THE PROPERTY. SUCH MATERIALS HAVE BEEN PROVIDED FOR INFORMATION-

---

1. The Due Diligence Packet contained financial information concerning the Hotel operations, a sample sale contract, and other documents.

AL PURPOSES ONLY, MUST BE INDEPENDENTLY VERIFIED BY BUYER TO BUYER'S COMPLETE SATISFACTION PRIOR TO EXECUTION OF THIS CONTRACT, AND ARE SUBJECT TO THE TERMS AND CONDITIONS OF THIS CONTRACT. NEITHER SELLER, BROKER, NOR ANY OF THEIR RESPECTIVE EMPLOYEES, AGENTS, OFFICERS, DIRECTORS, REPRESENTATIVES, ATTORNEYS, ACCOUNTANTS OR CONSULTANTS HAS MADE OR MAKES ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO THE ACCURACY, COMPLETENESS, OR CONSISTENCY OF THE MATERIALS INCLUDED IN ANY DUE DILIGENCE PACKET, BROCHURE OR ADVERTISEMENT, AND NO LEGAL COMMITMENT, OBLIGATION OR LIABILITY OF SELLER, BROKER, OR ANY OF THEIR RESPECTIVE EMPLOYEES, AGENTS, OFFICERS, DIRECTORS, REPRESENTATIVES, ATTORNEYS, ACCOUNTANTS OR CONSULTANTS, SUCCESSORS OR ASSIGNS SHALL ARISE BY REASON OF THESE MATERIALS OR INFORMATION RELATING TO ANY OF THESE MATERIALS.

22. *NOTICES.* Unless otherwise specifically provided in this Contract, all notices, demands or other communications given hereunder shall be in writing and shall be deemed duly delivered (i) upon personal delivery; (ii) as of the third (3rd) day after deposit in the U.S. mail, certified, return requested, postage paid; or (iii) the business day following deposit with FedEx (FedEx Priority Overnight Service), in either case addressed to the party to be notified at its address indicated in the signature portion of this document or at such other address as such party may have specifi[ed] in a written notice to the other party given in accordance with this Section.

33. *ATTORNEYS['] FEES.* A party to this Contract who is the prevailing party in any legal action or proceeding against any other party brought under or with respect to this Contract or the transaction contemplated hereby shall be additionally entitled to recover court costs and reasonable attorney's fees from the nonprevailing party.

26. Mr. Patel did not contest the existence of a contract with United Inns after it gave him notice on October 7, 2004 that it had accepted his offer. To the contrary, all of his actions from October 7, 2004 to October 28, 2004 showed he believed a binding contract with United Inns existed. For example, after receiving this notice Mr. Patel sought additional confirmations that United Inns considered him the purchaser, he deposited his Additional Earnest Money deposit *to comply with his then-existing contract* (not to protect his $100,000.00 initial deposit) and sought an enlargement of the *existing closing date* of October 28, 200[4].

27. United Inns was ready willing and able to close on the sale of the Hotel to Mr. Patel on October 28, 2004, pursuant to the Patel Contract.

28. Mr. Patel failed to close on his purchase of the Hotel on October 28, 2004, because he did not have financing. The Patel Contract and Mr. Patel's obligation to close on his purchase of the Hotel by October 28, 2004, were not contingent or conditioned on his ability to obtain financing. Though purchasing real estate with borrowed funds is a common practice for real estate inves-

tors, neither this particular contract nor the Oceanic [C]ontract included a financing contingency.

29. Upon Mr. Patel's breach of the Patel Contract, United Inns did not have a committed or obligated buyer of the Hotel.

30. Although T.R. 9.2 does not preclude Patel from presenting evidence and argument that there was an Exhibit "F" to the contract which contains additional terms, based upon all of the evidence, including Mr. Patel's actions and testimony, the Court finds that there was no Exhibit F attached to the Patel Contract.

31. If any conclusion of law set forth below shall be deemed a finding of fact, it is hereby incorporated as a finding of fact.

## II. Conclusions of Law

1. The Oceanic Contract was a binding contract upon its execution.

2. Oceanic defaulted on this contract by not timely making the required Additional Earnest Money Deposit.

3. The Patel Contract, pursuant to paragraph 45, constituted a written offer to purchase the Hotel in accordance with its terms and remained irrevocable through Noon Central Standard Time on October 7, 2004. Mr. Patel was required to close on his purchase of the Hotel on October 28, 2004.

4. On October 7, 2004 United Inns, in writing, timely accepted Mr. Patel's irrevocable offer, creating a binding contract between United Inns and Mr. Patel upon the terms set forth in the Patel Contract.

5. The "Notices" provision of the Patel Contract, paragraph 22, did not require any specific form of notice. Paragraph 22 only required that notice b[e] in writing. United Inns' email notice to Mr. Patel on October 7, 2004, that it had accepted his irrevocable offer[,] satisfied this condition.

6. Even if paragraph 22 of the Patel Contract can be read to contemplate a notice that could be mailed—i.e. a letter—there was no substantive difference between United Inns' email notification and a letter. Mr. Patel received actual, written and timely notice of United Inns' acceptance by email. The fact that United Inns' notice was provided by email and not a letter was immaterial and did not prejudice Mr. Patel in any way. Thus, United Inns' email notice substantially complied with the notice provision in the Patel Contract calling for notice to be by "letter." United Inns did not breach the Patel Contract or fail to satisfy any conditions precedent to its ability to enforce the Patel Contract.

7. In addition to the terms used in the Patel Contract, Mr. Patel's actions subsequent to receiving notification from United Inns that it had accepted his purchase offer evidence his intent to be bound by the Patel Contract. These actions also estop Mr. Patel from claiming otherwise now.

8. As stated above, the Court has concluded, based upon all the evidence, that there was no Exhibit F attached to the Patel Contract. This finding, however, is immaterial. Even if the Patel Contract contained the document Mr. Patel identified as Exhibit F, this document was not intended to, and did not, define any terms of the parties' bargain. The purported Exhibit F was a copy of a portion of the advertising flier Mr. Patel received prior to the auction. Mr. Patel never testified that he relied upon the alleged Exhibit F, or that he ever read Exhibit F. Additionally, paragraphs 14 and 21(E) of the Patel Contract made it clear that materials created prior to the

execution of the Patel Contract, such as the purported Exhibit F, were not part of the parties' agreement. Mr. Patel correctly admitted that paragraph 45 of the Patel Contract defined his rights as the back-up bidder, not the purported Exhibit F.

9. Mr. Patel breached the Patel Contract by not closing on October 28, 2004.

10. In its May 3, 2006 Order, the Court granted United Inns' motion for partial summary judgment, holding that the liquidated damages provision in the Patel Contract, paragraph 9, is enforceable. Mr. Patel's breach of the Patel Contract falls within the terms of the liquidated damages provision. Accordingly, United Inns is entitled to a judgment against Mr. Patel in the amount of $249,100 in liquidated damages.

11. Patel presented an equitable argument that it is basically unfair that United Inns would get to keep earnest money from another buyer when it sold the property for the original price to the original top bidder's assignee.[2] ... But there are equities in favor of United Inns. United Inns sold this hotel in an absolute auction. The terms of the auction were transparent. The irrevocability of the winning and back-up bidders['] offers up to a certain point was clear. The liquidated damages provision was offered and accepted by bidders. That financing was not a contingency was clear. The remedy sought by United Inns against Patel is not inequitable—it was contemplated by and freely bargained for by the parties who stood in equal bargaining positions at the time of the auction.

12. Pursuant to paragraph 33 of the Patel Contract United Inns is also entitled, as the prevailing party, to recover from Mr. Patel its court costs and the reasonable attorneys' fees it has incurred in prosecuting this action. . . .

13. Any foregoing finding of fact deemed a conclusion of law is incorporated herein by reference.

Appellant's App. at 6–18 (citations omitted; some alterations original). This appeal ensued.

## DISCUSSION AND DECISION

Patel appeals the trial court's judgment against him and in favor of United Inns. Specifically, Patel asserts that the court's judgment is erroneous for two reasons. First, Patel argues that the trial court did not correctly interpret either his contract with United Inns or the Oceanic Contract. Second, Patel contends that the liquidated damages clause of the Patel Contract is unenforceable. We address each contention in turn.

### Issue One: Breach of Contract

Patel first argues that the court's conclusion that he breached the Patel Contract is clearly erroneous. "[W]here[,] as here, the trial court enters special findings and conclusions pursuant to Indiana Trial Rule 52(A), . . . [t]he trial court's findings and conclusions will be set aside only if they are clearly erroneous." *Stonger v. Sorrell,* 776 N.E.2d 353, 358 (Ind.2002). A judgment is clearly erroneous if the evidence does not support the trial court's

---

2. After Patel's default, United Inns renewed negotiations with Oceanic. On November 11, 2004, both parties entered into a "Resolution Agreement and Amendment to Real Estate Contract" ("Resolution Agreement"), in which they acknowledged that they were in a dispute regarding Oceanic's purported breach but through new consideration "resolved this dispute." Appellant's App. at 247. The parties then agreed to a new closing date of November 29, Oceanic assigned its rights to Jewel, Inc. ("Jewel"), and Jewel became the ultimate owner of the Hotel.

findings or if those findings do not support the judgment. *See id.* We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Bank of Am. v. Ping,* 879 N.E.2d 665, 669 (Ind.Ct.App.2008). However, insofar as the trial court's decision here is controlled by the interpretation of contracts, we apply a *de novo* standard of review. *See Dedelow v. Pucalik,* 801 N.E.2d 178, 183 (Ind.Ct.App.2003).

Patel argues that the trial court's judgment is erroneous because it permits United Inns to enter into two contracts for the sale of one hotel. In particular, Patel asserts each of the following: (1) Oceanic did not breach its contract with United Inns, which was a condition precedent to the Patel Contract coming into effect; (2) the purported Exhibit F, a flier advertising the sale of the Hotel with stated "Terms and Conditions," Appellant's App. at 255, allowed Patel to reclaim his escrow payment on October 6, 2004, before United Inns notified him that he was the high bidder; and (3) it is inequitable to allow United Inns to close with an assignee of Oceanic while retaining Patel's escrow payments. United Inns responds that the trial court's judgment is supported by evidence of record and the contracts at issue. We agree with United Inns.

Patel first asserts that Oceanic did not breach its contract and, therefore, no obligations arose under the Patel Contract. Specifically, Patel argues that the terms of the Oceanic Contract did not clearly state Oceanic's escrow obligations, which led to a dispute between Oceanic and United Inns over whether Oceanic had in fact breached the Oceanic Contract. Because of that dispute, Patel continues, his obligations under the Patel Contract did not accrue.

The Oceanic Contract inconsistently defined Oceanic's additional escrow obligation as either the amount necessary to make the total escrow payment "ten percent (10.0%) of the Total Purchase Price" or "$530,000." *See* Appellee's App. at 2. It is not disputed that $530,000 is closer to twenty-five percent of the total purchase price, not ten percent. However, the $530,000 amount was handwritten into the contract. When construing a contract where there is apparent conflict, handwriting prevails over typewriting.[3] *See Scott v. Anderson Newspapers, Inc.,* 477 N.E.2d 553, 562 (Ind.Ct.App.1985). Accordingly, Oceanic's additional escrow payment was $530,000, which it is undisputed that Oceanic did not pay. Thus, the trial court did not err in concluding that Oceanic had breached its contractual obligations, there-

---

3. In his Reply Brief, Patel argues that the handwritten provisions of the Oceanic Contract should be ignored in favor of the rule that "ambiguities in a contract are to be strictly construed against the party who employed the language and who prepared the contract." *See* Reply at 3 (quoting *Rieth–Riley Constr. Co. v. Auto–Owners Mut. Ins. Co.,* 408 N.E.2d 640, 645 (Ind.Ct.App.1980)). But, as Patel also notes, the underlying rule in contract interpretation is to give effect to the intent of the parties at the time of contracting. *See Rieth–Riley Constr. Co.,* 408 N.E.2d at 645. Handwritten terms are favored over typewritten terms because there is a presump-

tion that the handwritten terms were more actively negotiated between the parties, and, therefore, that those terms best reflect the parties' intent. *See State v. Scott Constr. Co.,* 97 Ind.App. 652, 658, 174 N.E. 429, 431 (1931) (citing *Sprague Elec. Co. v. Bd. Comm'rs Hennepin County,* 83 Minn. 262, 264–65, 86 N.W. 332, 333 (1901) ("It is elementary that ... more force is to be given to such written insertions[ ] since they are presumed to express the deliberate intention of the parties more fully than the adopted provisions of printed, or even typewritten, forms.")). Accordingly, we apply that principle here.

by placing the Patel Contract in full force and effect.[4]

Similarly, Patel asserts that Exhibit F should have been considered by the trial court as that Exhibit showed that he could withdraw his initial escrow deposit at an earlier time than that contemplated in the Patel Contract.[5] That is, Patel maintains that the Patel Contract expired at 5:00 p.m. on October 6, pursuant to Exhibit F, rather than at noon on October 7, pursuant to the Patel Contract. And because Oceanic's default and United Inns' subsequent notice[6] to Patel that he had become the high bidder occurred in the intermediate time, Patel continues, he cannot have valid contractual obligations under the Patel Contract.

We must agree with the trial court, however, that Exhibit F is "immaterial" in light of the Patel Contract. *See* Appellant's App. at 17. Again, Paragraph 14 of the Patel Contract expressly states that, while Patel had received extrinsic materials "concerning the Property, ... th[o]se materials and documents have been supplied for informational purposes only...." *Id.* at 40. And Paragraph 21(E) goes further, stating that any such extrinsic materials "are subject to the terms and conditions of this contract." *Id.* at 42–43 (capitalization removed). As such, the trial court properly concluded that Exhibit F was immaterial to Patel's and United Inns' respective obligations.

Finally, Patel argues that "[i]t is inequitable to allow United [Inns] the windfall of retaining the back-up bidder's quarter of a million dollar earnest money on top of its acceptance and realization of the winning bid." Appellant's Brief at 20. To the extent that Patel's argument on this issue is contingent on Oceanic not having breached its contract, for the reasons discussed above Patel's argument must fail. And insofar as Patel contends that United Inns must remit its liquidated damages award simply because United Inns was able subsequently to sell the Hotel, that position plainly ignores Patel's own contractual obligations. Namely, had Patel not breached his contract, United Inns would not have had to find a new buyer. Likewise, that United Inns was fortunate to find another buyer does not release

---

4. Patel repeatedly asserts that "it is undisputed that there was no default" by Oceanic, Appellant's Brief at 23, relying on United Inns' subsequent agreement with Jewel. But as noted above, the Resolution Agreement expressly acknowledged that United Inns and Oceanic disputed whether Oceanic defaulted. The fact that they resolved that dispute after Patel's breach is irrelevant. Further, Patel's statement that United Inns expressly represented to Jewel that Oceanic was not in default plainly misconstrues the record. In the document assigning Oceanic's interests to Jewel, Oceanic—not United Inns—represented that it "is not in default." Appellant's App. at 243.

5. To the extent that Patel claims Exhibit F was part of the Patel Contract, that argument has been waived. Indiana Trial Rule 9.2(A) required United Inns to attach the contract to its complaint, which United Inns did. And if

Patel had an objection to the contract, Rule 9.2(B) required him to object in his first responsive pleading, which he did not do. *See, e.g., Mechs. Laundry & Supply, Inc. v. Wilder Oil Co.,* 596 N.E.2d 248, 253–54 (Ind.Ct.App. 1992) (holding that, under Rule 9.2(B), "an uncontested instrument ... shall be deemed admitted into evidence without proving its execution"), *trans. denied.* Accordingly, we do not address Patel's supposition that Exhibit F was, or should have been, attached to the Patel Contract.

6. Although Patel "respectfully disagrees" with the trial court's conclusion that United Inns' e-mail notice satisfied the terms of the Patel Contract, Appellant's Brief at 9 n. 3, Patel does not provide cogent argument as to how or why the trial court may have erred. Accordingly, Patel has waived that possible argument. *See* Ind. Appellate Rule 46(A)(8)(a).

Patel and entitle him to a remittance. Nor does United Inns' settlement with Oceanic vitiate Patel's breach. Thus, we are not persuaded by Patel's arguments on this point.

### Issue Two: Liquidated Damages Clause

Patel next contends that the liquidated damages clause in the Patel Contract is an unenforceable penalty. We addressed liquidated damages in *Gershin v. Demming*, 685 N.E.2d 1125, 1127–28 (Ind.Ct.App. 1997):

> A typical liquidated damages provision provides for the forfeiture of a stated sum of money upon breach without proof of damages. Liquidated damages provisions are generally enforceable where the nature of the agreement is such that when a breach occurs the resulting damages would be uncertain and difficult to ascertain. However, the stipulated sum will not be allowed as liquidated damages unless it may fairly be allowed as compensation for the breach. We are tolerant of provisions within contracts which provide for liquidated damages. Where the sum stipulated in the agreement is not greatly disproportionate to the loss likely to occur, the provision will be accepted as a liquidated damages clause and not as a penalty, but where the sum sought to be fixed as liquidated damages is grossly disproportionate to the loss which may result from the breach, the courts will treat the sum as a penalty rather than as liquidated damages. In determining whether a stipulated sum payable on a breach of contract constitutes liquidated damages or a penalty, the facts, the intention of the parties and the reasonableness of the stipulation under the circumstances of the case are all to be considered. The distinction between a penalty provision and one for liquidated damages is that a penalty is imposed to

secure performance of the contract and liquidated damages are to be paid in lieu of performance. Notwithstanding a plethora of abstract tests and criteria for the determination of whether a provision is one for a penalty or liquidated damages, there are no hard and fast guidelines to follow. The question whether a liquidated damages clause is valid, or whether it constitutes a penalty, is a pure question of law for the court.

*See also Harbours Condo. Ass'n v. Hudson*, 852 N.E.2d 985, 991–92 (Ind.Ct.App. 2006).

Here, Patel alleges that the liquidated damages clause in the Patel Contract is unenforceable for two reasons. First, Patel asserts that the damages United Inns would suffer in the event he breached the Patel Contract were readily ascertainable. Second, he maintains that the forfeiture of his total earnest money deposit amounts to a penalty because that sum is grossly disproportionate to the actual damages United Inns was likely to suffer as a result of his breach. In its grant of partial summary judgment to United Inns on this issue, the trial court concluded that the liquidated damages clause was enforceable. We review the court's order *de novo*. *See, e.g., Trinity Homes, L.L.C. v. Fang*, 848 N.E.2d 1065, 1068 (Ind.2006).

First, Patel asserts that, at the time it executed the Patel Contract, United Inns "knew that actual damages would be calculable." Appellant's Brief at 23. In support, Patel relies on our opinion in *Rogers v. Lockard*, 767 N.E.2d 982, 990 n. 6 (Ind.Ct.App.2002). In *Rogers*, we recognized that, where damages are readily ascertainable, a liquidated damages clause is inappropriate. For example, we stated, in a usual contract for the sale of real estate, "a simple measure of damages . . . may be arrived at by calculating the difference

between the sale price of the property to be sold and the fair market value of the property at the time of the buyer's breach." *Id.* But Patel offers no cogent argument of the fair market value of the Hotel for purposes of determining actual damages. Nor does he demonstrate that the real property here was not sold at its fair market value. Accordingly, his reliance on *Rogers* is misplaced.

Neither does United Inns' subsequent sale of the property shed light on the validity of the liquidated damages clause. At the time United Inns entered into the Patel Contract, it had no way of knowing how long it would have to maintain the Hotel in the event of Patel's breach or the total cost to maintain the Hotel until another buyer could be found. And United Inns could not have known what the ultimate sale price would be once both buyers from the auction had defaulted. In light of those uncertainties, it was not unreasonable for United Inns to include a liquidated damages provision in its sale contracts.

■ Patel also contends that the stipulated sum is unconscionable. But Patel's self-serving assertions on this point are without cogent reasoning and are therefore waived. *See* Ind. Appellate Rule 46(A)(8)(a). In any event, Patel's total earnest deposit was $249,100, ten percent of the total purchase price under the Patel Contract. That sum is in accordance with the losses United Inns suffered in each of 2003 and 2004 while running the Hotel. Hence, we cannot say that the liquidated damages sum is greatly disproportionate to the loss United Inns' was facing in the event of Patel's breach.

### Conclusion

In sum, the trial court did not err in concluding that Patel breached his contractual obligation under the Patel Contract. Nor did the court err in granting

partial summary judgment to United Inns on the issue of the validity of the liquidated damages clause in the Patel Contract. We therefore affirm the trial court's order on summary judgment and entry of judgment after the bench trial.

Affirmed.

DARDEN, J., and BROWN, J., concur.